IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DARYL HEARD, | ) | CASE NO. 5:07CV3839 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ECONOMUS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| STUART HUDSON, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Daryl Heard ("Heard") petitions this court for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 on December 18, 2007. Heard is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to a journal entry of sentence in the case of *State of Ohio v. Heard*, Case No. CR 05 03 0821(A) (Summit County 2005). For the reasons given below the magistrate judge recommends that the petition be denied.

I

The appellate court reviewing Heard's conviction and sentence found the following facts to be relevant to his case:

{¶ 2} Larry Belton was shot and killed in the early morning hours of October 30, 2004 in his apartment. Akron police immediately began their investigation by speaking with Belton's live-in girlfriend, Sheryl McCalister. McCalister was able to identify one of the men present at the time of the shooting by his nickname, Shorty Fats. In addition, through a photo array, McCalister identified the sole female defendant in the apartment, Kristie Guiser.

{¶ 3} Police continued their investigation and discovered that Shorty Fats was a

nickname used by Lachurn Terry. In addition, police learned that Guiser was the girlfriend of Heard, aka Petey. As a result, the Akron police began their search for Guiser and Heard, eventually locating them with the help of U.S. Marshals. Upon being arrested, Guiser was interviewed on multiple occasions by Detectives John Bell and Michael Schaeffer. Guiser revealed to the detectives that Terry, Heard, and a man she knew only as Good Game had robbed and killed Belton. Through further investigation, police determined that Good Game was a nickname used by Gregory Hilliard. McCalister was then shown photo arrays which included photos of Heard and Hilliard. McCalister positively identified both Hilliard and Heard from the arrays.

{¶ 4} Heard, Guiser, Hilliard, and Terry were indicted on the following counts: one count of aggravated murder in violation of R.C. 2903.01(B); two counts of murder in violation of R.C. 2903.02(B); one count of aggravated robbery in violation of R.C. 2911.01(A)(1); and one count of having weapons under disability in violation of R.C. 2923.13. The charges for aggravated murder, murder, and aggravated robbery each contained a firearm specification.

{¶ 5} On June 1, 2005, a jury trial commenced against Heard, Hilliard, and Terry. Prior to trial, Guiser had entered into a plea agreement and agreed to testify against the remaining defendants. During trial, the State primarily relied upon the testimony offered by Guiser and McCalister. McCalister was able to positively identify each of the defendants as having been present at the apartment the night Belton was killed. In addition, McCalister testified that Terry held her down after Belton was shot, preventing her from aiding him in any manner. Guiser's testimony included the following. Hilliard and Heard entered the apartment, displaying guns, in an attempt to rob Belton. Belton began to struggle with Heard. Heard then called out to Good Game (Hilliard), who shot Belton in the hip. Heard and Hilliard then ransacked the apartment, searching for money and valuables.

{¶ 6} The State also introduced the testimony of Summit County Chief Medical Examiner Dr. Lisa Kohler. Dr. Kohler testified that Belton died from massive internal bleeding caused by the gunshot wound. Dr. Kohler went on to testify that the bullet that entered Belton had damaged several sections of Belton's bowel, but was a treatable wound. Dr. Kohler concluded her testimony by noting that there was a good possibility that Belton could have survived the wound had he received prompt medical attention.

{¶ 7} Once the State rested its case, each of the defendants moved for acquittal. Each motion was denied by the trial court. The defense then rested without presenting any evidence and the defendants renewed their motions. The motions were again denied and the matter submitted to the jury. Heard and Hilliard were found guilty of each count in the indictment. Terry was found not guilty of having a weapon under disability and not guilty of the firearm specifications, but guilty of the remaining counts in the indictment. The trial court, thereafter, sentenced the

defendants accordingly. Heard received an aggregate sentence of life in prison plus three years for the firearm specification.

*State v. Heard*, 2006 WL 1896373, at *1-*2 (Ohio App. July 12, 2006).

Heard failed to file a timely appeal of his conviction. On December 21, 2005, he filed in the state appellate court a motion for leave to file a delayed appeal. The court granted his motion. In his brief in support of his appeal, Heard raised two assignments of error:

### ASSIGNMENT OF ERROR ONE

APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WAS BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW.

### ASSIGNMENT OF ERROR TWO

APPELLANT'S CONVICTION FOR AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

On July 12, 2006, the state appellate court overruled Heard's assignments of error and affirmed the judgment of the trial court. Heard did not timely file an appeal of this decision to the Ohio Supreme Court.

Heard, now represented by the Ohio Public Defender, filed an application to reopen his direct appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)") on October 10, 2006. In his application, Heard argued that his appellate counsel had been ineffective for failing to raise the following assignment of error in his direct appeal:

> Mr. Heard was denied due process when his trial counsel failed to seek a stipulation from the state in order to prevent the jury from learning of Mr. Heard's extensive criminal past.

On October 16, 2006, Heard filed *pro se* a second application to reopen his direct appeal pursuant to R. 26(B). Heard argued the following in his brief in support of his application:

### Assignment of Error I:

3

> THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION FOR COUNSEL[']S FAILURE TO RAISE THE ISSUE THAT THE TRIAL COURT ABUSED ITS DISCRETION AND PREJUDICED THE APPELLANT[']S RIGHTS TO DUE PROCESS WHEN IT FAILED TO PROHIBIT THE STATE FROM EXERCISING ITS PEREMPTORY CHALLENGE IN A RACIALLY DISCRIMINATING FASHION.
>
> <u>Assignment of Error II</u>:
>
> THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF HIS SIXTH AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION FOR COUNSEL[']S FAILURE TO RAISE THE ISSUE THAT APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR COUNSEL[']S FAILURE TO SUBPOENA A[N] EXPERT WITNESS TO DISCREDIT THE TESTIMONY OF THE DRUG ADDICT CO-DEFENDANT WHO TESTIFIED AGAINST HIM.
>
> <u>Assignment of Error III</u>:
>
> THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF HIS SIXTH, AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION FOR COUNSEL[']S FAILURE TO RAISE THE ISSUE THAT THE TRIAL COURT ERRED IN DENYING APPELLANT[']S MOTION TO SEVER HIS TRIAL.

On October 27, 2006 the state appellate court dismissed Heard's *pro se* application, finding that R. 26(B) did not permit a second application to reopen and that his second application was barred by *res judicata*. The court also denied Heard's first application to reopen on the ground that Heard had failed to raise a genuine issue of ineffective assistance of appellate counsel because he could not show that he was prejudiced by his appellate counsel's failure to attempt to stipulate to his prior convictions.

On October 17, 2006, Heard filed *pro se* in the Ohio Supreme Court a motion for leave to file a delayed direct appeal. Heard asserted two propositions of law in his brief in

4

support of his motion:

Proposition of Law I:

THE APPELLANT[']S CONVICTION FOR AGGRAVATED MURDER WAS BASED UPON INSUFFICIENT EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION.

Proposition of Law II:

APPELLANT['] CONVICTION FOR AGGRAVATED MURDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE FOURTEENTH AMENDMENT UNDER THE UNITED STATES CONSTITUTION.

On November 29, 2006, the Ohio Supreme court denied Heard's motion for a delayed appeal.

Heard timely appealed the denial of his application to reopen to the Ohio Supreme Court. In his memorandum in support of jurisdiction, Heard raised the following two propositions of law:

PROPOSITION OF LAW I:  Trial counsel renders constitutionally ineffective assistance when counsel fails to seek a stipulation from the state in order to prevent the jury from learning of Mr. Heard's prior convictions to establish one element of the offense of Having Weapons under Disability.  This failure deprives a defendant of rights guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

PROPOSITION OF LAW II:  When an appellate attorney fails to raise meritorious issues in a criminal defendant's direct appeal of a conviction, the attorney renders constitutionally ineffective assistance, in contravention of the Sixth and Fourteenth Amendments to the United States Constitution, and Section Sixteen, Article I of the Ohio Constitution.

On February 28, 2007, the Ohio Supreme Court denied Heard leave to appeal and dismissed his appeal as not involving any substantial constitutional question.

Heard filed in this court a petition for a writ of habeas corpus on December 18, 2007. Heard asserts two grounds for relief in his petition:

5

> GROUND ONE: Petitioner was denied the effective assistance of trial counsel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America, when trial counsel failed to seek a stipulation to one of his prior criminal offenses.
>
> GROUND TWO: Petitioner was denied the effective assistance of appellate counsel, in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States of America, when appellate counsel failed to raise meritorious issues in Petitioner's appeal of right.

Respondent filed an Answer on May 16, 2008. Doc. No. 11. Heard filed a Traverse on July 31, 2008. Doc. No. 16. Thus, the petition is ready for decision.

II

*A. Jurisdiction*

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a) and (d).

Heard was convicted in the Court of Common Pleas in Summit County. This court has jurisdiction over Heard's petition.

*B. Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Heard's claims involve legal issues which can be

6

independently resolved without additional factual inquiry.

*C.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus. 28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991). If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

Heard's claim of ineffective assistance of *trial* counsel should have been raised on direct appeal and was not. Moreover, Heard cannot argue that he raised this claim in his application to reopen pursuant to R. 26(B). Such a claim cannot be raised in an application to reopen, as R. 26(B) authorizes only an "appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel." *Ohio App. R. 26(B).* Thus, Heard did not raise this claim of ineffective assistance of trial counsel in his

7

direct appeal or in his application to reopen. *Res judicata* now bars Heard from raising this claim in any Ohio court. *State v. Dehler*, 73 Ohio St. 3d 307, 307, 652 N.E.2d 987, 987 (1995).

Heard also has exhausted his claim of ineffective assistance of appellate counsel. Heard first raised this claim in the state appellate court in his motion to reopen pursuant to R. 26(B), and he timely appealed the denial of that application to the Ohio Supreme Court. As Heard has no other means of raising this claim in the Ohio courts, the claim is exhausted.

Heard has no remaining state remedies for his claims. Because Heard has no remaining state remedies, his claims are exhausted.

*D.      Procedural default*

Respondent argues that Heard's first ground for relief has been procedurally defaulted.[1] Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

---

[1] Respondent asserts that "Heard's claims were procedurally defaulted in the state courts," Answer at 8, but respondent only advances arguments in support of Heard's having defaulted his first ground for relief. The court finds no reason to believe that Heard's claim of ineffective assistance of appellate counsel was procedurally defaulted, as it was considered on the merits in the state appellate court and timely appealed to the Ohio Supreme Court.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Heard defaulted his claim that trial counsel was ineffective for failing to seek a stipulation as to Heard's criminal history when he failed to raise that claim on direct appeal. Ohio law requires an appellant to raise a claim at the first opportunity to do so; otherwise, the claim is barred by *res judicata*. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994); *Dehler*, 73 Ohio St. 3d at 307, 652 N.E.2d at 987.

Heard attempted to raise this claim in his motion for a delayed appeal in the Ohio Supreme Court. The Ohio Supreme Court denied Heard's motion without explanation. Under Ohio law, a criminal constitutional question cannot ordinarily be raised in the Ohio Supreme Court unless it is first presented in the court below. *State v. Jester*, 32 Ohio St.

9

3d, 147, 154, 512 N.E. 2d 962 (1987). It is unlikely that the Ohio Supreme Court would reach the merits of claims that were not raised in the underlying appellate proceeding. Where the state courts are silent as to the reasons for denying a petitioner's due process claim, the Sixth Circuit has applied the presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996). Thus, this court must presume that the Ohio Supreme Court denied Heard's motion for a delayed appeal on procedural grounds because Heard already had defaulted that claim.

Ohio's requirement that an appellant raise his claims on appeal at the first opportunity to do so and its assertion of *res judicata* to bar claims not so raised are adequate and independent grounds upon which Ohio may rely to foreclose habeas review. *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001). Heard argues that appellate counsel's failure to raise the issue of trial counsel's failure to seek a stipulation is a cause sufficient to excuse his procedural default. When a claim has been defaulted due to the ineffective assistance of counsel, that is a cause sufficient to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). However, as is shown below, Heard's appellate counsel was not ineffective for failing to raise on appeal trial counsel's failure to seek a stipulation. Because Heard's claim of ineffective assistance of appellate counsel is without merit, the court should not excuse Heard's default of his first ground for relief.

For these reasons, the court should overrule Heard's first ground for relief as procedurally defaulted.

III

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the

10

standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus. As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence. *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000). Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction. *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court). A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result. *Id.* at 405-06. "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases." *Id.* at 405. A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand. *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001). If a court fails to identify the correct legal principal at issue, the "unreasonable application of" clause does not apply. *Id.* at 730.

"[A] determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). The petitioner, however, may rebut "the presumption of correctness by clear and convincing evidence." *Id.* This court will consider Heard's remaining ground for relief under the deferential standard of review accorded the state court's determination of a prisoner's constitutional claims.

Heard argues in his second ground for relief that his appellate counsel was ineffective for not asserting on appeal that his trial counsel was ineffective for failing to seek a stipulation as to Heard's extensive criminal record. Defendants have a right to appointed counsel for the first appeal of right. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel. *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990). The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), is applicable to claims of ineffective assistance of appellate counsel. *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997). A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one: "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167. Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision. *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167. The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167. A court reviewing counsel's performance "must judge the reasonableness of counsel's challenged conduct on the facts of the

13

particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168. Further "the burden rests on the accused to demonstrate a constitutional violation." *United States v. Cronic*, 466 U.S. 648, 658 (1984). Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

In his application to reopen his direct appeal, Heard argued that appellate counsel had been ineffective for failing to argue the ineffectiveness of trial counsel for not stipulating

14

as to Heard's criminal record; Heard asserted that the United States Supreme Court's decision in *Old Chief v. United States*, 519 U.S. 172, 181 (1997), required the conclusion that the unnecessary presentation of Heard's criminal history violated his rights to due process and a fair trial. The state appellate court reviewing this claim in Heard's application to reopen his direct appeal made the following findings of fact and conclusions of law relevant to Heard's ineffective appellate counsel claim:

> First, this Court has repeatedly held that "*Old Chief* construed a federal statute and, therefore, is not binding upon this Court's interpretation of an Ohio statute." *State v. Hilliard*, 9th Dist. No. 22808, 2006-Ohio-3918, at ¶26, quoting *State v. Kole* (June 28, 2000), 92 Ohio St.3d 303. In *Hilliard*, this Court affirmed the convictions of Appellant's co-defendants, despite his counsel raising the argument now raised by Appellant.
> Furthermore, Appellant has failed to demonstrate prejudice resulting from his counsel's ineffectiveness. On appeal, Appellant challenged solely the mens rea element of aggravated murder. By failing to challenge the remaining elements on appeal, Appellant conceded them. Furthermore, Appellant did not challenge his remaining convictions. In his motion for reopening, Appellant has stated in conclusory fashion that he was prejudiced. As this Court squarely rejected Appellant's challenge to the mens rea  element of his conviction for aggravated murder and he conceded the remaining elements, he can show no prejudice from his trial counsel's failure to attempt to stipulate to his prior convictions.

*Heard*, Case No. C.A. 23025 (Ohio App., 9th Dist October 27, 2006); Answer, Exh. 11, p. 2.

The performance of Heard's appellate counsel's was not objectively deficient for failing to argue trial counsel's ineffectivess. The result in *Old Chief* rested on the Court's interpretation of Fed. Evid. R. 403, which allows the court to bar relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." The Court did not find that admission of the nature of Old Chief's prior offenses despite his offer of a stipulation as to prior

convictions violated his rights to due process and a fair trial.  Heard errs, therefore, in arguing that *Old Chief* requires the conclusion that the unnecessary presentation of Heard's criminal history violated his rights to due process and a fair trial.

Prior to Heard's trial, some courts found *Old Chief* to be persuasive authority in interpreting Ohio's statutes, *e.g.*, *State v. Totarella*, 2004 WL 473382 (Ohio App. March 12, 2004).  Lorain, Cuyahoga, Lake, and Butler counties distinguished *Old Chief* and did not find it to be persuasive authority.  *See State v. Kole*, 2000 WL 840503 (Ohio App. June 28, 2000), *rev'd on other grounds by* 92 Ohio St. 3d 303, 750 N.E.2d 148 (2001); *State v. Jordan*, 1999 WL 257808 (Ohio App. April 29, 1999); *State v. Payne*, 1999 WL 262177 (Ohio App. March 31, 1999); and *State v. Russell*, 1998 WL 778312 (Ohio App. Nov. 9, 1998).  The appellate court of Summit County had not issued a decision regarding the issue.  The appellate court of Summit County had previously held, however, that neither the state nor a trial court is required to accept a defendant's stipulation as to the existence of a conviction.  *State v. Smith*, 68 Ohio App. 3d 692, 695, 589 N.E.2d 454, 457 (1990).  Given the state of the law in Summit County at the time of Heard's trial, the decision of an appellate attorney in Summit County not to raise on appeal the failure of a trial attorney to offer a stipulation as to previous convictions cannot be said to be objectively unreasonable.

Moreover, even if one assumes that the performance of Heard's appellate counsel was objectively deficient, Heard cannot obtain habeas relief on his claim of ineffective assistance of appellate counsel because he fails to show that he was prejudiced by appellate counsel's supposed deficient performance, for three reasons.  First, given the unsettled state of the law with regard to *Old Chief* in Summit County at the time of Heard's trial, an appellate court would not have granted Heard relief on a claim that trial counsel's

16

failure to offer a stipulation fell below an objective standard of reasonableness.

Second, three weeks after the Summit County appellate court ruled on Heard's direct appeal, it denied Heard's co-defendant, Hilliard, appellate relief on the very claim of ineffective assistance of trial counsel for failing to stipulate that Heard claims his appellate counsel should have raised. *See State v. Hilliard*, 2006 WL 2141197, at *5-*6 (Ohio App. Aug. 2, 2006). This demonstrates that Heard would not have prevailed had appellate counsel raised this claim.

Third, Heard could not have obtained appellate relief on a claim of ineffective assistance of trial counsel because he does not demonstrate that trial counsel's allegedly ineffective performance prejudiced Heard, a necessary predicate to obtaining appellate relief on a claim of ineffective assistance of trial counsel. Heard argues that he was convicted largely on the testimony of his ex-girlfriend, Guiser, a co-defendant who testified against Heard. Heard contends that as Guiser testified in return for a seven-year sentence rather than life imprisonment, her testimony was open to substantial impeachment." According to Heard, "But for the jury's learning of the highly prejudicial evidence [of Heard's previous convictions], a jury reasonably could have acquitted Heard." Traverse at 6. Heard has not examined Guiser's testimony, however, in the context of the entire trial. He says nothing, for example, about the other evidence against Heard and Heard's trial strategy in light of this evidence. Absent such an analysis, Heard fails to demonstrate that had the stipulation been offered and had it been accepted, there is a reasonable probability that the jury would have had a reasonable doubt respecting Heard's guilt. Consequently, it cannot be said that Heard has met his burden of proving that had appellate counsel raised ineffectiveness of trial counsel on appeal there is a reasonable probability that the

appellate court would have granted Heard relief.

The performance of Heard's appellate counsel was not objectively unreasonable, and Heard has not demonstrated that he was prejudiced by appellate counsel's allegedly ineffective performance.  For these reasons, the court should dismiss Heard's second ground for relief as without merit.

IV

For the reasons given above the court should overrule Heard's grounds for relief and deny his petition.


Dated:  September 12, 2008             s\ Nancy A. Vecchiarelli
                                       Nancy A. Vecchiarelli
                                       United States Magistrate Judge


## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v.Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**